IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 21, 2005

## STATE OF TENNESSEE v. JOE SHELTON BERRY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-C-1682     Steve Dozier, Judge**

_____

**No. M2004-03052-CCA-R3-CD  - Filed September 27, 2005**

_____

The defendant, Joe Shelton Berry, pled no contest to one count of rape.  The trial court sentenced the defendant to eight years at 100%, but suspended service of the sentence and placed him on supervised probation.  Thereafter, the trial court revoked the defendant's probation and placed his entire sentence into effect.  On appeal, the defendant challenges the trial court's revocation of his probation.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Emma Rae Tennent (on appeal) and Amy Harwell, (at trial) for the appellant, Joe Shelton Berry.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bernard McEvoy, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

On December 5, 2002, the defendant entered a negotiated no contest plea to rape.  He was sentenced to eight years at 100%, suspended on supervised probation.  As part of the conditions of his probation, the defendant was required to complete a sexual offenders treatment program and provide a DNA submission.

On July 18, 2003, a probation violation warrant was filed, alleging that the defendant had violated the terms of his probation by: (1) failing to carry out instructions given by the Probation Officer on at least two occasions; (2) failing to verify DNA submission; and (3) failing to comply

with sex offender treatment directives, thereby being discharged from treatment on three separate occasions.

The trial court held a probation revocation hearing on July 18, 2003. Following the hearing, the trial court revoked the defendant's probation and placed the defendant's sentence into effect. However, the court agreed to conduct a hearing to consider suspension of the remainder of the defendant's sentence after 120 days.

At the November 25, 2003 hearing, the defendant claimed that he was in bad health and that his condition had worsened since being incarcerated. The defendant also requested that he be placed with another counselor. The trial court found that the defendant had "been less than truthful with the Court[,]" but based on his age and health, ordered split confinement of seven months from the date he was taken into custody, then reinstatement of probation. The trial court further imposed an additional condition of probation that the defendant not have contact with any children and re-enter the sex offender treatment program.

On October 28, 2004, another probation violation warrant was issued alleging that the defendant was again discharged from the sex offender treatment program on August 11, 2004. Thereafter, the trial court held a second probation revocation hearing. At the hearing, John Brogdon, the director of the sex offender treatment program, testified the defendant was punctual and attended every class, but nonetheless, he made little progress in the program and was very deceptive about his conviction and contact with the children in his family. As Mr. Brogdon explained, the defendant would "almost [tell] the truth but then refuse to." He would vaguely acknowledge his criminal actions but then later deny them. According to Mr. Brogdon, the defendant would say, "She [the twelve-year old granddaughter] came on to me, and I probably put my thing in her. But she came on to me."

Mr. Brogdon testified that he found the defendant to be unreliable and lackadaisical with regard to the court-ordered treatment. Mr. Brogdon stated that defendant was discharged from the treatment program because he did not fully participate in the program and was holding the rest of the group back. Yolanda Johnson, the defendant's probation officer, also testified. She stated that she was concerned about the close proximity the defendant lived to his grandchildren and that he had cancelled, and not rescheduled, his last polygraph test.

The defendant testified that he attended the sex offender treatment class every week as he was required. He also testified that he lived in his house for forty-two years, but that his daughter lived in the house next to his house. The defendant stated that he would be willing to reschedule and take the polygraph test if the test would help him. On examination by the court, the defendant denied telling the court at the previous hearing that his granddaughter came on to him and "tried to insert [his] penis into her vagina."

Defense counsel argued in closing remarks that the defendant had met the conditions of probation by attending treatment and that he should not be required to admit that he raped his

granddaughter because such admission was not a condition of the plea agreement. The trial court stated that the defendant was required to attend and complete treatment and Mr. Brogdon was in the best position to determine what one must do to complete treatment. The court found that the defendant "flip-flops" between three versions of what did or did not happen and because of his ongoing, deceptive activity could not complete the sex offender treatment program. Therefore, the court revoked probation and placed the defendant's sentence into effect. The defendant appealed.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in revoking his probation. Specifically, he argues that the trial court erred in revoking his probation based on allegations of unsatisfactory progress and the subsequent discharge from the sexual offender treatment program.

Initially, we note that the decision to revoke probation lies in the sound discretion of the trial court. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). The trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. See Tenn. Code Ann. §§ 40-35-310,-311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Revocation of probation is subject to an abuse of discretion standard of review, rather than a *de novo* standard. Id. If the trial judge has exercised "conscientious judgment in making the decision rather than acting arbitrarily," then there is no abuse of discretion. Leach, 914 S.W.2d at 107. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. Harkins, 811 S.W.2d at 82; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

As previously stated, we do not decide the matter as if we were the trial court. Instead, we review the record to determine whether the trial court abused its discretion by revoking probation. Upon review, the record reflects that after the defendant violated his probation the first time, he was given a second chance at probation. At the second probation revocation hearing, Mr. Brogdon, the defendant's treatment provider, testified that the defendant was evasive, not fully forthcoming, and holding the group back. Mr. Brogdon, a sex offender treatment provider for over twenty-seven years, determined that the defendant could not be assessed for future risk given the failed multiple opportunities for treatment. Mr. Brogdon recalled that the defendant did not fully participate when the focus was on him and that he displayed a casual disregard toward his treatment. Mr. Brogdon testified that he discharged the defendant from the program and would not accept him back because he refused to be honest and try to work out his problems.

After hearing the testimony, the trial court found that the defendant violated his probation when he was discharged from the sex offender treatment class, for ongoing deceptive activity, whereby he could not complete the treatment program or be assessed for future risk. In making this finding, the trial court apparently accredited Mr. Brogdon's testimony. Looking at the record, we conclude the trial court exercised conscientious judgment in finding the defendant violated his probation when he was discharged from the sex offender treatment program.

We also note that this holding does not contradict our decision in State v. William A. Marshall, No. M2001-02954-CCA-R3-CD, 2002 WL 31370461, at *8-9 (Tenn. Crim. App., at Nashville, Oct. 14, 2002), where we held that a defendant could fulfill the objective standards of a treatment program without being "cured." Although the defendant was punctual and attended every session, he did not have otherwise positive participation as did the defendant in Marshall. The defendant did not fulfill the objective standards of his treatment program by his lack of candor, lackadaisical attitude, and inadequate participation. There is sufficient evidence in the record to support that the defendant failed to meet the objective standards of the treatment program, which was the basis of the trial court's decision. Accordingly, the trial court did not abuse its discretion in revoking the defendant's probation.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the trial court's revocation of the defendant's probation and reinstatement of his original sentence.

_____
J.C. McLIN, JUDGE

-4-